**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Michael Buxbaum,** | |
| **Plaintiff,** | **1:24-cv-09784 (VSB) (SDA)** |
| **-against-** | **REPORT AND RECOMMENDATION** |
| **Webull Financial, LLC** | |
| **Defendant.** | |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE:**

*Pro se* plaintiff Michael Buxbaum ("Plaintiff" or "Buxbaum") brings this action alleging numerous claims under various theories. Pending before the Court is a motion by Defendant Webull Financial LLC ("Webull" or "Defendant") to dismiss the action pursuant to Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, ECF No. 53; *see also* Def.'s 5/27/2025 Mem., ECF No. 54.)[1] For the reasons set forth below, it is respectfully recommended that Defendant's Motion to Dismiss be GRANTED, pursuant to Rule 12(b)(1), for failure to allege facts demonstrating subject matter jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6), for failure to state a claim.

## BACKGROUND

Plaintiff is a serial litigant who has filed more than one hundred actions in this district since December 2024. *See Buxbaum v. Sommer,* No. 24-CV-09546 (JAV), 2025 WL 1114319, at *1

---

[1] Also before the court are various motions filed by Plaintiff for judgment in his favor (*See* Pl.'s Nots. of Mot., ECF Nos. 29, 39, 45, 47 and 59.) As set forth below, it is recommended that these motions be DENIED.

(S.D.N.Y. Apr. 15, 2025). On December 17, 2024, Plaintiff filed the initial complaint in this action alleging that Webull "refuse[d] to transfer money to TD Bank to pay child support," and requesting that Webull "transfer the money." (Compl., ECF No. 1, at 5, 6.) Plaintiff alleged that on or around December 9, 2024, he deposited $20,164.85 to a Webull commodities trading account. (Pl.'s 1/17/2025 Aff., ECF No. 9, ¶1; *see also* Def.'s 5/27/2025 Mem. at 4 n.2 ("Plaintiff has previously been a Webull securities (*i.e.,* non-futures) brokerage customer.").)

Plaintiff alleged that, on multiple occasions in late December 2024, Webull rejected his attempt to transfer $20,100.00 from his account "to purchase cryptocurrency." (Pl.'s 1/17/2025 Aff. ¶¶ 2, 6.) In February 2025, Plaintiff sued Webull in Florida state court based on his inability to transfer such funds. (Def.'s 5/27/2025 Mem. at 4 n.2 (referring to *Buxbaum v. Wellbull Financial, LLC,* No. 50-2025-CC-001941-XXXA-SB (Fla. Cir. Ct. Palm Beach Cnty. Mar. 5, 2025)).) Plaintiff's state court claim was dismissed on March 4, 2025, with the court holding that "Plaintiff successfully transferred $20,100 from his Webull Account . . . to his intended beneficiary." (*See id*. (quoting *Order Granting Defendant's Motion to Dismiss, Buxbaum v. Wellbull Financial, LLC,*[2] No. 50-2025-CC-001941-XXXA-SB (Fla. Cir. Ct. Palm Beach Cnty. Mar. 4, 2025)).[3]

On December 18, 2024, Plaintiff filed an amended complaint in this action (12/18/24 Am. Compl., ECF No. 4), followed by another amended complaint on December 23, 2024. (12/23/24

---

[2] The Court notes that the state court in Florida appears to have mistakenly identified Defendant as "Wellbull Financial, LLC," instead of Webull Financial, LLC.

[3] The Court takes judicial notice that the Order quoted by Defendant in its dismissal memorandum (*see* Def.'s 5/27/2025 Mem. at 4 n.2) is publicly available on a website maintained by the Clerk of the Circuit Court & Comptroller of Palm Beach County (mypalmbeachclerk.com), and such Order has been reviewed by the Court.

Am. Compl., *stricken*, ECF No. 5.) Plaintiff then filed yet another complaint styled as a "Supplemental Complaint" on December 31, 2024. (Supp. Compl., *stricken*, ECF No. 6.)

On January 22, 2025, District Judge Broderick dismissed Plaintiff's December 18, 2024 amended complaint without prejudice and with leave to replead, and Plaintiff's December 23, 2024 amended complaint and Supplemental Complaint were both stricken from the docket, since Plaintiff was not authorized to file them. (1/22/25 Order, ECF No. 11, at 1, 3.) In the January 22 Order, Judge Broderick found that Plaintiff had not properly pled diversity jurisdiction. (*See id*. at 2-3.) Judge Broderick also found that "Plaintiff fail[ed] to identify a specific statute conferring federal jurisdiction or allege facts to support such a federal claim," and therefore that "the Amended Complaint [did] not establish federal question jurisdiction." (*Id*. at 2.) Judge Broderick provided Plaintiff 30 days to file an amended pleading "that properly assert[ed] subject-matter jurisdiction." (*Id*. at 3.)

On February 20, 2025, Plaintiff filed the operative complaint, referred to herein as the Second Amended Complaint ("SAC"). (SAC, ECF No. 13.) The SAC contains allegations of: "breach of fiduciary duty for not offering the suitable investment of [cryptocurrency]," violations "of the commerce clause [of the] 14th amendment, the due process clause [of the] 5th amendment," the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b and Uniform Commercial Code ("UCC") Article 9. (SAC at 4.) Plaintiff describes Webull as depriving him of the opportunity to "purchase and sell or send or deliver" cryptocurrency through its platform. (*Id*. at 6.) Plaintiff alleges this deprivation is evidenced by Section 35 of Webull's Futures Customer Agreement. ("Futures Agreement"). (*See* SAC at 6; *see also* Futures Agmt., Ex. A to Gill 5/27/25 Decl., ECF No. 55-1, at 17.) The SAC further alleges Webull "is seizing the Plaintiff's cash in New York and is unlawfully offering a contract of

sale in another state and country thereby violating interstate commerce and due process." (SAC at 6.)

On April 11, 2025, Plaintiff filed an additional complaint restating allegations that Defendant violated the CEA and newly alleging that Defendant violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*. (4/11/25 Compl., ECF No. 28.) That same day, Plaintiff also moved for summary judgment, demanding $200,000,000 for each of his FCA and CEA claims. (*See* Not. of Mot., ECF No. 29.)[4]

On May 27, 2025, Defendant filed the motion to dismiss that is now before the Court and a memorandum that addresses the allegations in the SAC.[5] (*See* Def.'s Mot. to Dismiss; Def.'s 5/27/25 Mem.) On June 5, 2025, Defendant submitted a reply in further support of its motion to

---

[4] In addition to his amended pleadings, Plaintiff filed in this action five proposed Orders to Show Cause, as well as six affidavits. (*See* Pl.'s 4/13/25 Proposed Ex Parte Order to Show Cause, ECF No. 31 (requesting the court grant an order for a $5,000 transfer from Plaintiff's "Payward Interactive, Inc. dba Kraken cryptocurrency to Plaintiff's Michael Buxbaum One Finance Inc. debit card," to pay for food, vitamins and shelter.); Pl.'s 4/21/25 Proposed Ex Parte Order to Show Cause, ECF No. 32 (requesting order restraining Webull from "accepting money for cryptocurrency futures"); Pl.'s 4/21/25 Proposed Ex Parte Order to Show Cause, ECF No. 33 (requesting order directing Webull make payment of $1,500,000 to Plaintiff for FCA violations); Pl.'s 4/28/25 Ex Parte Order to Show Cause, ECF No. 36 (requesting order restraining the trade of NVIDIA Corporation stock on NASDAQ exchange, order restraining "Pricewaterhouse Coopers LLP from the independent auditors that certified the audit reports Form 10K and Forms 10Q for the last seven years," order restraining Webull from owning or possessing NVIDIA stock and order directing Webull make payment to plaintiff $100,000 to third-party cryptocurrency trading account and third party banking account); Pl.'s 5/2/25 Ex Parte Order to Show Cause, ECF No. 40 (containing same requests as in ECF No. 36); Pl.'s 5/11/25 Aff., ECF No. 42 (stating Plaintiff "used" Webull's website in 2024 and 2025 and read Futures Agreement); Pl.'s 5/12/25 Aff., ECF No. 43 (re-stating period during which Plaintiff used Webull's website and that Webull rejected attempted transfers); Pl.'s 5/15/25 Aff., ECF No. 44 (stating NVIDIA Corporation does not manufacture inventory or sell tangible property in United States).)

[5] While Defendant acknowledges receipt of Plaintiff's April 11 Complaint (*see* Def.'s 5/27/25 Mem. at 5 n.3), Defendant does not address the FCA claims contained within it.

dismiss reiterating that the SAC should be dismissed pursuant to Rule 12(b)(1), or pursuant to Rules 12(b)(6) and 9(b). (Def.'s 6/5/25 Mem., ECF No. 61.)[6]

## LEGAL STANDARDS

### I.    Rule 12(b)(1)

A defendant's challenge for lack of Article III standing is properly raised under Rule 12(b)(1) at the motion to dismiss stage. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.à.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). The party invoking federal jurisdiction bears the burden of establishing constitutional standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

"When considering a motion to dismiss for lack of subject matter jurisdiction . . ., a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 2000). A court also may "refer to evidence outside the pleadings," *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002), but it "may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004). A challenge to subject matter jurisdiction requires a court to weigh the evidence and satisfy itself that it has the power to hear the case. *See Celestine v. Mt. Vernon*

---

[6] Plaintiff most recently filed (again without permission) another complaint on May 28, 2025, including only a reiteration of his FCA claims, and none of the allegations included in the previous complaints. (*See* 5/28/25 Compl., ECF 60.)

*Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 299 (S.D.N.Y. 2003) (quotation omitted), *aff'd*, 403 F.3d 76 (2d Cir. 2005).

To satisfy the requirements of Article III standing, a plaintiff must demonstrate (1) injury in-fact which is "concrete and particularized," (2) a causal connection between the injury and the alleged conduct such that the injury is "fairly . . . trace[able] to the challenged action of the defendant" and (3) a likelihood that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560, 561 (citations omitted). A plaintiff may survive a motion to dismiss under Rule 12(b)(1) by "alleg[ing] facts that affirmatively and plausibly suggest that they have standing to sue." *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (cleaned up) (quotation omitted).

"[W]ithout jurisdiction, [a] district court lacks the power to adjudicate the merits of [a] case or dismiss a case with prejudice." *John*, 858 F.3d at 735 (quotations omitted). As such, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." *Id.* (quotation omitted); *see also Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F. 4th 95, 106 (2d Cir. 2022).

## II.    Rules 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

6

In deciding a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "Determining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

### III.    Standards Applied To *Pro Se* Plaintiffs

Where, as here, a plaintiff is proceeding *pro se*, the Court must be mindful that the plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Complaints filed by *pro se* litigants "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (cleaned up) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Nevertheless, a *pro se* plaintiff "must still plead enough facts to state a claim to relief that is plausible on its face." *Owens v. City of New York*, No. 14-CV-00966 (KBF), 2015 WL 715841, at *1 (S.D.N.Y. Feb. 19, 2015) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "A serial litigant's claims, moreover, may be entitled to 'less deference than most pro se litigants because of [their] extensive litigation history.'" *Buxbaum v. Zillow Grp. Inc.*, No. 25-CV-02766 (RA), 2025 WL 1549017, at *1 (S.D.N.Y. May 30, 2025) (quoting *In re Lynch*, No. 19-2965, 2022 WL 16467, at *2 (2d Cir. Jan. 3, 2022) (summary order)).

## DISCUSSION

I. **Defendant's Motion To Dismiss**

For purposes of the pending motion to dismiss, the operative pleading is the SAC because Defendant did not consent to Plaintiff filing additional complaints and the Court did not grant leave to file further amended complaints.[7] For the reasons set forth below, Plaintiff's SAC should be dismissed.

A. **Plaintiff's Lack Of Standing**

As an initial matter, Webull argues that the SAC should be dismissed pursuant to Rule 12(b)(1) because the complaint "fails to allege any cognizable injury whatsoever." (Def.'s 5/27/2025 Mem. at 6-7.) The crux of the SAC is that Webull did not "provid[e] the opportunity" to Plaintiff "to purchase and sell or send or deliver" cryptocurrency. (*See* SAC at 6; *see also id*. (alleging that Webull "is wrongfully limiting the supply of the cryptocurrency market for the Plaintiff's, Michael Buxbaum's responsible investment . . ..").) Webull contends that Plaintiff cannot establish standing because he "does not allege that he has ever had a futures account, or traded any cryptocurrency futures contract, with Webull" and his "generalized grievance about

---

[7] Just as Judge Broderick struck Plaintiff's prior unauthorized pleadings (*see* 1/22/25 Order at 3 (striking ECF Nos. 5 and 6)), Plaintiff's April 11, 2025 Complaint (ECF No. 28) and May 28, 2025 Complaint (ECF No. 60) also should be stricken for failure to comply with Federal Rule of Civil Procedure 15(a)(2). *See* Fed. R. Civ. P. 15(a)(2) (unless amendment is as of right, "party may amend its pleading only with the opposing party's written consent or the court's leave"); *see also La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-1575-CV, 2025 WL 841687, at *4 (2d Cir. Mar. 18, 2025) ("Federal Rule of Civil Procedure 15(a) provides that after a party amends its complaint once as a matter of course, it may amend its pleading [on subsequent occasions] only with the opposing party's written consent or the court's leave." (internal quotation marks omitted)). Notwithstanding the fact that the April 11 and May 28, 2025 Complaints should be stricken, the Court below addresses the FCA claims contained in such pleadings. (*See* Discussion Section I.B.2., *infra*.)

the scope of Webull's product offerings is not an injury sufficient to confer standing." (Def.'s 5/27/2025 Mem. at 6.) The Court agrees.

Even accepting all the allegations in the SAC as true, and providing the Plaintiff with the deference afforded to *pro se* plaintiffs, Plaintiff still must, at minimum, "allege facts that *affirmatively* and *plausibly* suggest that [he has] standing to sue." *Kiryas*, 495 F. App'x at 188 (quotation omitted) (emphasis added). Plaintiff's SAC fails to meet that minimum threshold and should be dismissed.

Article III standing requires a plaintiff to establish three things: "(1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision." *Harty v. West Point Realty, Inc.*, 28 F. 4th 435, 442 (2d Cir. 2022) (citing *Lujan*, 504 U.S. at 560-61). An injury in fact must be "concrete" and "particularized." *Spokeo, Inc v. Robins*, 578 U.S. 330, 340 (2016). An injury is "concrete" if it "has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *In re Christie's Data Breach Litigation*, 767 F. Supp. 3d 12, 14 (S.D.N.Y. 2025) (cleaned up) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)). An injury is particularized when it impacts a plaintiff in a personal and individualized way. *See Spokeo*, 578 U.S. at 340. An injury is not particularized if it is suffered in common with people generally. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006)).

Plaintiff alleges in the SAC that he has been injured because of Defendant's failure to allow him to transfer funds to purchase cryptocurrency and generally alleges misrepresentations

regarding trading cryptocurrency.[8] (SAC at 4, 6-7.) However, the Court agrees with Defendant that these alleged injuries are merely general grievances about the scope of Webull's product offerings common to all consumers who use its platform. (Def.'s Mem. at 6.) Plaintiff has made no factual showing that Webull's conduct in offering or not offering cryptocurrency trading opportunities harmed him in any way beyond a speculative investment opportunity. Moreover, Plaintiff has not alleged that he ever had a futures account or traded cryptocurrency through Webull. Accordingly, Plaintiff has not met his burden to establish that he suffered a cognizable injury, and therefore, lacks standing to pursue his claims.[9] *See Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 530 (S.D.N.Y. 2008) (finding Plaintiffs did not meet the standing injury requirement for claims relating to mutual funds in which they did not purchase shares.) Accordingly, it is recommended that the SAC be dismissed without prejudice for lack of standing. *See Fac. v. New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021) (where complaint dismissed for lack of Article III standing, dismissal must be without prejudice, since such dismissal is for lack of subject matter jurisdiction, and without jurisdiction district court lacks power to adjudicate merits of case).

Even assuming, *arguendo*, that Plaintiff has standing to sue, his SAC should be dismissed, pursuant to Rule 12(b)(6), for failure to state a claim.

---

[8] With respect to the transfer of funds generally, the Florida court already held that "Plaintiff successfully transferred $20,100 from his Webull Account . . . to his intended beneficiary." (*See* Order Granting Defendant's Motion to Dismiss, *Buxbaum v. Wellbull Financial, LLC*, No. 50-2025-CC-001941-XXXA-SB (Fla. Cir. Ct. Palm Beach Cnty. Mar. 4, 2025).)

[9] The Court need not address causation and redressability since Plaintiff has not established that he sustained an injury.

B. **Plaintiff's Insufficient Federal Claims**

1. **CEA Claim**

In the SAC, Plaintiff purports to bring a claim under the CEA. (*See* SAC at 4.) The private right of action under the CEA is governed by Section 22 of the Act, codified at 7 U.S.C.A. § 25. The statute provides a private right of action against anyone "who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter . . . for actual damages" resulting from transactions involving "any contract of sale of any commodity for future delivery (or option on such contract or any commodity) or any swap." 7 U.S.C. § 25(a)(1)(B). Transactions are limited to four discrete circumstances: "receiving trading advice for a fee, making a contract of sale of any commodity for future delivery or the payment of money to make such a contract, placing an order for purchase or sale of a commodity, or market manipulation in connection with a contract for sale of a commodity." *Loginovskaya v. Batratchenko* 764 F.3d 266, 270 (2d Cir. 2014).

Plaintiff has failed to allege that he engaged in a transaction consistent with any of the four discrete circumstances conferring a private right of action under the CEA. *See Klein & Co. Futures, Inc. v. Board of Trade of City of New York* 464 F.3d 255, 260 (2d Cir. 2006) ("the common thread of these four subdivisions [conferring a private right of action under the CEA] is that they limit claims to those of a plaintiff who actually traded in the commodities market"). Accordingly, Plaintiff's CEA claim should be dismissed.

2.    **FCA Claims**

Plaintiff did not plead an FCA claim in the SAC, which (as noted above) is the operative

pleading. Nevertheless, for sake of completeness, the Court addresses Plaintiff's FCA claims that

are pled in Plaintiff's later, unauthorized pleadings. (*See* 4/11/25 Compl.; 5/28/25 Compl.)

"An action under the FCA imposes civil liability on any person who 'knowingly presents,

or causes to be presented, to an officer or employee of the United States Government . . . a false

or fraudulent claim for payment or approval.'" *Bonsell v. Muldowney*, No. 25-CV-01170 (LLS),

2025 WL 2042228, at *3 (S.D.N.Y. July 17, 2025) (quoting 31 U.S.C. § 3729(a)). In addition to

empowering the United States to prosecute offenders, see 31 U.S.C. § 3730(a), the FCA permits

any person, known as a "relator," to enforce the statute by filing a *qui tam* complaint in the

federal government's name. *See U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932

(2009).

"In federal court, private parties 'may plead and conduct their own cases personally or by

counsel[.]'" *Bonsell*, 2025 WL 2042228, at *3 (quoting 28 U.S.C. § 1654). "Because a *qui tam*

action under the FCA is brought in the name of the United States, which remains the real party

in interest, a private individual cannot bring such an action *pro se*." *Id*. (citing *United States ex rel.*

*Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("Because False Claims Act causes of

action are not personal to relators, they are statutorily barred from bringing such actions *pro*

*se*.")). Accordingly, Plaintiff cannot bring claims under the FCA without counsel. *See id*.

(dismissing FCA claims brought by *pro se* litigant; *see also Buxbaum v. Hirschler*, No. 25-CV-00960

(OEM) (TAM), 2025 WL 1548882, at *2 (E.D.N.Y. May 31, 2025) ("Because an individual

proceeding *pro* [*se*] cannot serve as a relator in qui tam claims under the FCA, this action must be dismissed under the FCA for lack of statutory standing.").

Accordingly, it is recommended that Plaintiff's FCA claims be dismissed.[10]

### C.    Plaintiff's Insufficient Constitutional Claims

Plaintiff alleges violations of the Commerce Clause and the Fifth and Fourteenth Amendments. (SAC at 4.) Plaintiff cannot state a claim under any of these constitutional provisions. First, the Commerce Clause grants Congress the power to "to regulate commerce . . . among the several states." U.S. Const. Art. I §8, cl. 3. "[T]here is no private action for damages under the Commerce Clause." *Washington v. U.S. Tennis Ass'n, Inc.*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003)

Second, the Fifth Amendment only applies to actions of the federal government. *See Guadagni v. New York City Transit Auth.*, No. 08-CV-03163 (CPS) (SMG), 2009 WL 1910953, at *7 (E.D.N.Y. June 30, 2009), *aff'd*, 387 F. App'x 124 (2d Cir. 2010) ("The right to due process guaranteed by the Fifth Amendment . . . applies only with regard to the federal government."). Here, Plaintiff has not alleged any action by the federal government.

---

[10] While some courts, upon dismissing FCA claims brought by *pro se* litigants, have granted the plaintiff time either to secure counsel or withdraw his action, *see*, *e.g.*, *United States ex rel. Daniels v. Sealed Defendant*, No. 25-CV-03658 (LTS), 2025 WL 1369304, at *1 (S.D.N.Y. May 9, 2025), the Court does not recommend that approach here. This is because Plaintiff has not pled facts sufficient to state a plausible claim under the FCA. In the April 11, 2025 Complaint, Plaintiff alleges that Webull "communicat[ed] fraudulent information and making false claims to the Federal Government . . . by selling cryptocurrency futures and derivatives without providing the marketplace in the United States for Plaintiff Michael Buxbaum to purchase and sell or send or deliver cryptocurrency or to responsibly invest and trade the purchase of future cryptocurrency contracts free from excessive speculation." (4/11/25 Compl. at 5.) Plaintiff has failed to allege, as required, that Webull made a false claim to the United States Government for payment or approval. *See Bonsell*, 2025 WL 2042228, at *3. In the May 28, 2025 Complaint, Plaintiff makes references to "False Claims," but no facts to support any such claims made to the federal government for payment or approval.

Third, the Fourteenth Amendment only applies to actions of the state government. *See United States v. Morrison*, 529 U.S. 598, 621 (2000) ("the Fourteenth Amendment, by its very terms, prohibits only state action"). Here, Plaintiff has not alleged any state action.

Accordingly, Plaintiff's constitutional claims should be dismissed.

### D.    Plaintiff's Insufficient State Law Claims

#### 1.    Plaintiff's UCC Claim

Plaintiff alleges violations of Article 9 of the UCC. (*See* SAC at 4.) The UCC is a model code adopted by the states "to simplify, clarify, and modernize the law governing commercial transactions[.]" U.C.C. § 1-103(a)(1); *see also* N.Y. U.C.C. § 1-103(a)(1) (containing identical language). Article 9 of the of the New York UCC governs "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract[.]" N.Y. U.C.C. 9-109(a)(1). Because Plaintiff has pled no facts supporting the existence of a secured transaction, his UCC claim should be dismissed.

#### 2.    Plaintiff's Fraud Claims

On page 4 of the SAC, Plaintiff appears to assert a common law fraud claim. (*See* SAC at 4 (referring to claim for "FRAUD for seizing cash").) Under New York Law, [11] in order to state a claim for common law fraud, a plaintiff must plausibly allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d. Cir. 1997); *see also Vazquez v. Walmart, Inc*

---

[11] The Court applies New York law herein, since the Webull Customer Agreement, to which Plaintiff cites in support of his fraud claim (*see* SAC at 6) contains a New York choice of law provision. (Webull Cust. Agmt., ECF No. 55-1, ¶ 40.l.)

704 F. Supp. 3d 417, 427 (S.D.N.Y. 2023) (applying standard in *Schlaifer* to a 12(b)(6) motion to dismiss). Further, "a claim of fraud must also be alleged with the particularity required by Rule 9(b)." *Vazquez*, 704 F. Supp. 3d at 427. Rule 9(b)'s particularity standard "require[s] the complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

In the SAC, Plaintiff appears to suggest that Webull made misleading statements to him regarding his ability to purchase and sell cryptocurrency. (*See* SAC at 6.) However, he fails to specify the statements that he contends were fraudulent, fails to identify who made the statements, fails to state where and when the statements were made and fails to explain why the statements were fraudulent. Accordingly, it is recommended that Plaintiff's fraud claims be dismissed.

### 3. Plaintiff's Breach of Fiduciary Duty Claim

Plaintiff alleges in the SAC that Webull breached its fiduciary duties "for not offering the suitable investment of Bitcoin and Ethereum and other cryptocurrencies." (SAC at 4.) Under New York law, "[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Blum v. Spaha Cap. Mgmt., LLC*, 44 F. Supp. 3d 482, 497 (S.D.N.Y. 2014) (quoting *Armentano v. Paraco Gas Corp.*, 90 A.D.3d 683, 684-85 (2d Dep't 2011). "A fiduciary relationship exists . . . when one person is under a duty to act for or to

give advice for the benefit of another upon matters within the scope of the relation." *Id*. (quoting *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991)).

Under New York law, "[a] broker is a fiduciary . . . [who] owes a duty of good faith and loyalty to his principal . . . [and thus] is under a duty to disclose to his principal all the material information that he has concerning the transaction involved." Blum, 44 F. Supp. 3d at 497 (quoting *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 700-01 (2d Cir. 1993)). "At the same time, a broker's duty to the client is on a 'transaction-by-transaction basis' in that '[t]he client may enjoy the broker's advice and recommendations with respect to a given trade, but has no legal claim on the broker's ongoing attention.'" *Id*. (quoting *de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002). Thus, Plaintiff must plead facts establishing that, with regard to specific transactions in which Webull served as his broker, Webull in some way breached his fiduciary duty to Plaintiff. Because Plaintiff has not pled any facts to suggest that Webull breached its duties to him regarding specific transactions, it is recommended that Plaintiff's breach of fiduciary duty claim be dismissed.

### E. Leave To Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports,*

*Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)) (internal quotation marks omitted).

In the present case, it is recommended that this action be dismissed without prejudice pursuant to Rule 12(b)(1). In the alternative, if this action is dismissed pursuant to Rule 12(b)(6), it is recommended that Plaintiff not be granted leave to amend with respect to his federal claims, constitutional claims and UCC Article 9 claims, since any amendment would be futile. Because Plaintiff did not engage in any commodities transaction, he cannot state a CEA claim; because a *pro se* plaintiff cannot pursue a *qui tam* action, Plaintiff cannot state an FCA claim; because there is no private action for damages under the Commerce Clause, Plaintiff cannot state a Commerce Clause Claim; because there has been no action by the federal government, Plaintiff cannot state a Fifth Amendment claim; because there has been no State action, Plaintiff cannot state a Fourteenth Amendment claim; and because there were no secured transactions, Plaintiff cannot state a UCC Article 9 claim.

Although the Court is very skeptical that Plaintiff can state plausible fraud and breach of fiduciary duty claims against Webull, Plaintiff has not yet had the benefit of a ruling with respect to such claims. Accordingly, it is recommended that Plaintiff be granted leave to amend with respect to such claims. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

## II.    Plaintiff's Motions

Plaintiff's pending motions, *i.e.*, those filed at ECF Nos. 29, 39, 45, 47 and 59, appear to be premised on the viability of the claims contained in the SAC and/or subsequent pleadings. Because it is recommended that all of Plaintiff's claims be dismissed, all of Plaintiff's motions should be denied.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendant's motion to dismiss (ECF No. 53) be GRANTED without prejudice pursuant to Rule 12(b)(1). Alternatively, it is recommended that this action be dismissed pursuant to Rule 12(b)(6), and that Plaintiff be granted leave to amend only his fraud and breach of fiduciary duty claims. It is further recommended that Plaintiff's motions (ECF Nos. 29, 39, 45, 47 and 59) be DENIED.

The Court takes judicial notice that, based upon filings in a case pending in the Eastern District of New York, *Buxbaum v. Travis*, Case No. 25-CV-01432 (OEM) (TAM), Plaintiff may be a citizen of the State of New York,[12] and not a citizen of the State of Florida, as alleged in Plaintiff's pleadings in this action. If Plaintiff is a citizen of the State of New York, diversity jurisdiction may be lacking here since Webull also may be a citizen of the State of New York.[13] Accordingly, in the event that Judge Broderick adopts this Court's recommendation to dismiss the federal and constitutional claims on Rule 12(b)(6) grounds, he may wish to order Plaintiff to show cause why

---

[12] *See* Travis Decl., EDNY 25-CV-01432 ECF No. 19-1, ¶ 24 & Exs. S & T.

[13] A limited liability company like Webull is "generally a citizen of each state in which any of its members is a citizen" for diversity citizenship purposes. *See Kruglov v. Copart of Conn., Inc.*, 771 F. App'x 117, 118 (2d Cir. 2019). Although Webull has a New York address, the record does not reflect the citizenship of its members.

diversity jurisdiction exists in this case. Then, if diversity jurisdiction is lacking, Judge Broderick can decide whether he wants to exercise supplemental jurisdiction over any state law claims that Plaintiff may possess. If Judge Broderick declines to exercise supplemental jurisdiction, there would be no need to provide Plaintiff leave to amend.

Dated:    November 13, 2025
          New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**

        \*           \*           \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).